## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| James J. Palmer, as trustee of the Palmer Irrevocable GST Trust of 2012,<br><br>    Plaintiff,<br><br> v.<br><br>Rex Construction Services, Inc.,<br><br>    Defendant. | Case No.: _____<br><br>JURY DEMANDED |

## COMPLAINT AT LAW

Plaintiff, James J. Palmer ("Mr. Palmer"), as trustee of the Palmer Irrevocable GST Trust of 2012 ("Palmer Trust"), by and through his undersigned counsel and for his complaint against Defendant Rex Construction Services, Inc. ("Rex"), states as follows:

## NATURE OF THE CASE

1. This is a breach of contract action concerning Rex's breach of a construction contract under which Rex, the general contractor of the construction project, abandoned and failed to complete the construction of the project, failed to remit payments it received from Palmer Trust to its subcontractors, and failed to procure lien waivers for itself and its subcontractors for the work completed. Instead, Rex withheld payments it received in trust on behalf of the subcontractors and appears to have used these funds to satisfy other financial obligations unrelated to the project. Rex's breach of contract caused Palmer Trust to incur substantial damages, including delay-related losses caused by Rex's abandonment and added costs related to subcontractors that were unpaid. Rex's failure to pay subcontractors amounts due, and for which Palmer Trust had paid Rex, forced Palmer Trust to make double payments to those subcontractors that Rex failed to pay.

1

## THE PARTIES

2. Plaintiff, James J. Palmer, resides in and is a citizen of Nevada. Mr. Palmer brings this suit in his capacity as trustee of the Palmer Trust, an irrevocable trust with its principal place of administration in Las Vegas, Nevada.

3. Defendant Rex Construction Services, Inc. is a Delaware corporation with a principal place of business located at 620 N. LaSalle Dr., Chicago, IL 60654. Rex is in the business of providing construction services related to the construction of residential and commercial buildings.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship among the parties, where Plaintiff is a citizen of Nevada and Defendant is a citizen of Delaware and Illinois, and because the amount of controversy exceeds $75,000.

5. The Court has personal jurisdiction over Rex under 735 ILCS 5/2-209 because Rex is a corporation doing business within Illinois and has made or performed under a contract substantially connected with Illinois.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Rex is a resident of this district. Alternatively, venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## GENERAL ALLEGATIONS

**I.     The Palmer Residence Construction Agreement**

7. On December 22, 2021, Palmer Trust and Rex executed a construction agreement (the "Agreement") for the construction of a single-family residence located at 2643 N. Lakewood

Avenue in Chicago, IL (the "Project"). The Agreement is attached hereto as **Exhibit A** and is comprised of, inter alia, the "Agreement" and the "General Conditions" thereto.

8. Under the Agreement, Rex - the general contractor for the Project - agreed to "fully execute the entire Work described in the Contract Documents" as necessary to complete construction of the Project. *See* Exhibit A at 3 (Art. 2 of Agreement).

9. The Agreement also provides that the Work commences on the same day the Agreement is executed, and that "the Contractor shall achieve Substantial Completion of the entire Work: Not later than Five Hundred Eighty Five (585) calendar days from the date of commencement of the Work (the "Substantial Completion Date")." *See* Exhibit A at 4 (Art. 4 of Agreement).

10. The deadline for achieving Substantial Completion of the Project is "of the essence of the Contract." *See* Exhibit A at 104 (§ 8.2.1 of General Conditions).

11. In exchange for Rex's work on the Project, Palmer Trust agreed to pay Rex the cost to complete the Project ("Cost of the Work"), plus a 6% fee calculated based on the Cost of the Work. *See* Exhibit A at 4–5, 7–10 (§ 5.1.1, Art. 7 of Agreement).

12. The Agreement provides that Palmer Trust shall make progress payments to Rex for the period preceding each application for payment. *See* Exhibit A at 12–15, 105–06 (Art. 12 of Agreement; § 9.3.1 of General Conditions).

13. Progress payments are payments "paid in trust to the Contractor for distribution to Subcontractors." *See* Exhibit A at 105–06 (§ 9.3.1 of General Conditions).

14. As shown below, the General Conditions provide that with each progress payment Palmer Trust makes to Rex, Rex shall promptly—no later than seven days after receiving a payment—pay its subcontractors and procure lien releases from its subcontractors for the work completed:

3

> **§ 5.5.1** The Contractor shall promptly pay (and secure the discharge of any liens asserted by) all persons properly furnishing labor, equipment, materials or other items in connection with the performance of the Work (including, but not limited to, any Subcontractors of any tier) to the extent that the Owner has paid the Contractor for such Work. The Contractor shall furnish to the Owner releases of liens and claims and other documents with its payment application to evidence such payment and discharge. The Owner may, at its option, withhold payment, in whole or in part, to the Contractor until such documents are furnished. The Contractor may provide other security acceptable to the Owner, such as a bond, in lieu of paying disputed liens or claims. The Contractor may record a release bond executed by a surety authorized to issue surety bonds in the state where the Project is located within fifteen (15) days after the Contractor becomes aware of or is notified of the filing and making of the lien, in which event the Owner shall not withhold payment in whole or in part to the Contractor for such lien.
>
> **§ 9.6.2** The Contractor shall pay each Subcontractor, no later than seven days after receipt of payment from the Owner, the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of the Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner. If the Contractor does not receive payment for any cause that is not the fault of a particular Subcontractor but does receive payment for materials supplied or work performed by that Subcontractor, the Contractor shall pay that Subcontractor in accordance with its subcontract for its satisfactorily completed work.

*See* Exhibit A at 101, 108 (§ 5.5.1, § 9.6.2 of General Conditions).

15. The Agreement also makes clear that Palmer Trust's progress payments to Rex shall not include "[a]ny amount for which the Contractor does not intend to pay a Subcontractor or material supplier, unless the Work has been performed by others the Contractor intends to pay." *See* Exhibit A at 13, 106 (§ 12.1.6.2 of Agreement; § 9.3.1.2 of General Conditions).

16. The General Conditions provide that "the Contractor shall defend and indemnify the Owner from all loss, liability, damage or expense, including reasonable attorney's fees and litigation expenses, arising out of any lien claim or other claim for payment by any Subcontractor or supplier of any tier." *See* Exhibit A at 108 (§ 9.6.8 of General Conditions).

**II.    Rex Failed to Pay Its Subcontractors Progress Payments It Received from Palmer Trust**

17. On December 18, 2023, Rex submitted to Palmer Trust Application for Payment No. 21, which requested payment for work Rex and its subcontractors performed in October and November, 2023. Rex further requested that the payment to Rex be "expedited in an effort to get sub[contractor]s paid prior to the holidays and end of the year."

4

18. On December 22, 2023, Palmer Trust made a progress payment to Rex in the amount of $1,010,180.97 ("Payment No. 21"), more than $850,000 of which Rex designated to be paid to its subcontractors for the work performed.

19. On January 30, 2024, Max Hickey, Rex's Director of Construction, informed Mr. Palmer by email that "REX Construction Services has made a difficult decision to close the business . . . [which] resulted in a work stoppage on the project on Friday, 1/25/2024."

20. On the same day, Palmer Trust's counsel emailed Rex's counsel, inquiring: "Have all sub[contractor]s been paid by Rex through the last payment application?" Rex's counsel did not respond.

21. On February 1, 2024, Palmer Trust's counsel issued a termination letter to Rex terminating Rex for cause pursuant to § 14.1.2 of the Agreement and demanded that "Rex submit current lien waivers for itself and its subcontractors and suppliers and an accounting of the status of payment for the project."

22. On February 6, 2024, Justin Palmer, the designated Owner's Representative, responded to Mr. Hickey's January 30, 2024 email, inquiring: "Can I get confirmation that you will be paying the sub[contractor]s for the last pay app #21 which your received the funds for in December?"

23. On February 7, 2024, Steven Bickford, Chief Operating Officer of Rex's related entity Rex.one, responded to Mr. Palmer by email, stating that "***REX Construction Services owes money to multiple subs on multiple projects*** and is unfortunately unable to meet its financial obligations. RCS has sought legal guidance to determine actions from here, including payments. As such, ***RCS isn't in a position to make payments*** until they receive such guidance." (Emphasis added.)

5

24. On February 8, 2024, Palmer Trust's counsel sent Rex a letter demanding that "the amounts it paid for Payment Application No. 21 (and for all prior applications for payment) be disbursed to the subcontractors that were included therein in the full amounts that were billed."

25. On the same day, Palmer Trust's counsel responded to Rex's counsel demanding that Rex "immediately return the balance of the progress payment so that the Palmer Trust can pay sub[contractor]s directly for work performed."

26. To date, Rex has refused to pay the remaining balance of Payment No. 21 to its subcontractors for the work performed for the Project, has not returned that remaining balance to Palmer Trust, and has refused to explain how it has used the amounts Palmer Trust paid Rex for Application for Payment No. 21.

27. On information and belief, Rex failed to pay its subcontractors more than $540,000 of the total amount of Payment No. 21 and has used the balance for purposes unrelated to the Project, including to satisfy the financial obligations of Rex and/or its related entities.

28. Rex also charged Palmer Trust approximately $59,700 for a deposit to be made to its subcontractor "Nationwide Lifts" for the "conveying systems" for the Project. On information and belief, Rex failed to pay Nationwide Lifts the $59,700 deposit and has never credited Palmer Trust or returned the amount paid.

29. Further, Payment Application No. 21 includes a nearly $33,000 charge for Rex's "Fee," which is to be "calculated upon the reimbursable Cost of the Work." *See* Exhibit A at 4–5 (§ 5.1.1 of Agreement). The Agreement identifies Subcontractor Costs as reimbursable "Cost of the Work." *See* Exhibit A at 4–5, 7–8 (§ 5.1.1 of Agreement ; § 7.3 of Agreement).

30. On information and belief, Rex charged Palmer Trust Fee amounts for Subcontractor Costs that Rex did not pay to its subcontractors, including the subcontractor amounts in Application for Payment No. 21 and the $59,700 deposit to Nationwide Lifts.

## COUNT I
*(Breach of Contract)*

31. Mr. Palmer incorporates and realleges Paragraphs 1–30 as though fully set forth herein.

32. Palmer Trust and Rex entered into the Agreement, a valid and binding contract executed and signed by both parties.

33. Palmer Trust successfully performed its obligations under the Agreement, including making progress payments to Rex, the most recent one being Payment No. 21.

34. Under the Agreement, Rex agreed to "fully execute the entire Work described in the Contract Documents," which was for the construction of the Project.

35. Rex was also obligated under the Agreement to pay its subcontractors for the work completed and to pay the portion of each progress payment Rex received from Palmer Trust intended and designated to be paid to the subcontractors.

36. Rex breached the Agreement by refusing to complete the work of the Project and by failing to achieve substantial completion by the Substantial Completion Date.

37. Rex also breached the Agreement by failing to pay its subcontractors the monies it received from Palmer Trust that Rex represented were to be paid to its subcontractors and by failing to procure lien releases from its subcontractors.

38. On information and belief, Rex used some of the monies it received from Palmer Trust under Payment No. 21 to satisfy financial obligations that are unrelated to the Project.

39. As a result of Rex's breach of the Agreement, Palmer Trust:

    a. incurred added costs and delay-related expenses due to Rex's abandonment and refusal to complete the Project;

    b. was forced to pay Rex's subcontractors amounts it had previously paid Rex for Payment No. 21 in order to resolve the subcontractors' claims for payment and

to engage the subcontractors to complete their respective scopes of work for the Project; and

c. incurred damages in excess of $425,000 and attorneys' fees, both of which are recoverable under the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Palmer requests that this Court enter judgment in his favor and against Rex on Count I for Breach of Contract in an amount to be determined in trial, plus interest and attorneys' fees, and for any other relief this Court deems fair and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Mr. Palmer respectfully demands a trial by jury on all questions of fact raised by this Complaint.

Dated: March 12, 2024

Respectfully submitted,

By: */s/ Kahin Gabriel Tong*

Perkins Coie LLP
Firm ID# 39225

Andrew Greene (*pro hac vice forthcoming*)
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
(206) 359-8000
AGreene@perkinscoie.com

Diana Bowman
110 North Wacker, Suite 3400
Chicago, IL 60606
(312) 324-8400
DBowman@perkinscoie.com

Kahin Gabriel Tong
110 North Wacker, Suite 3400
Chicago, IL 60606
(312) 324-8400
KTong@perkinscoie.com

*Attorneys for Plaintiff James J. Palmer, as trustee of the Palmer Irrevocable GST Trust of 2012*